IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
FARRAH CLAXTON,              *
                             *
        Plaintiff,           *
                             *
        v.                   *       CV 109-087
                             *
CONNECTICUT GENERAL LIFE     *
INSURANCE COMPANY,           *
                             *
        Defendant.           *
```

**O R D E R**

Before the Court in the captioned case is Defendant's motion to dismiss Plaintiff's claim under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, for failure to exhaust administrative remedies. (Doc. no. 6.) Defendant has responded in opposition to the motion (doc. no. 7), and Plaintiff has replied (doc. no. 9). Defendant has, along with its motion, filed a declaration with accompanying exhibits, and, in her response, Plaintiff has attached several exhibits and an affidavit. So that it could consider the entire record, the Court converted the instant motion into one for summary judgment. (Order of March 13, 2010,

Doc. no. 14.) The Court gave the parties notice of the conversion. (Doc. no. 15.) See Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam). For the reasons discussed below, Defendant's motion (doc. no. 6) is **GRANTED**.

## I. Background

### A. Factual History

*1. Lead up to Plaintiff's Surgery*

Mrs. Farrah Claxton (Plaintiff) is a participant in a health insurance plan (the plan) in the name of her husband, Mr. Reginald Claxton. (Compl. ¶ 5.) The plan is provided as an employee benefit by Reginald Claxton's employer, the Kellogg Company (Kellogg). CIGNA Healthcare (CIGNA or the insurance company) is the plan's exclusive provider organization. Plaintiff was insured by her husband's policy at all relevant times for purposes of this case. (Id.)

On August 21, 2008, Plaintiff was diagnosed with pancreatitis (inflammation of the pancreas), and a cyst was discovered on her pancreas. (Compl. Ex A.) Accordingly, Plaintiff was hospitalized at University Hospital in Augusta, Georgia from August 21, 2008, until August 24, 2008.

Following her hospitalization, Plaintiff's physician, Dr. Schwartz, opined that Plaintiff was required to, due to her condition, undergo a procedure known as an endoscopic

ultrasound. (Compl. Ex. B.) According to Dr. Schwartz, there was a physician in Augusta that "occasionally" performed the procedure, but the physician was "not an expert." (Id.) Dr. Schwartz recommended that Plaintiff consult with Dr. Hoffman, an expert in endoscopic ultrasounds, at the Medical University of South Carolina. (Id.) Dr. Hoffman was an out-of-network physician under the terms of Plaintiff's plan. (Id.) In Dr. Schwartz's opinion, it was "medically necessary"[1] for Plaintiff to go outside her provider network to consult with Dr. Hoffman. Dr. Schwartz stated his opinions in a letter, dated September 15, 2009, a copy of which was mailed to Plaintiff's insurer. (Claxton Aff. ¶ 6.) Ten days later, on September 25, 2008, Defendant received authorization from her insurance company to consult with Dr. Hoffman. (Resp. Ex. C, Doc. no. 7-1.)

Plaintiff then consulted with Dr. Hoffman, who informed Plaintiff that she required a surgical procedure to remove the object from her pancreas. Dr. Hoffman identified the object on Plaintiff's pancreas as a mucinous pancreatic cyst. Plaintiff scheduled a surgery to have the cyst removed. The procedure was scheduled to be performed by Dr. Cole at the Medical University of South Carolina on October 21, 2008. Prior to that date, on

---

[1] According to the terms of the Summary Plan Description (SPD) of Plaintiff's health insurance plan, the plan does not cover "expenses for supplies, care, treatment, or surgery that are not Medically Necessary." (Bent Decl. Ex. A (hereinafter SPD) at 21, Doc. no. 6-1.) Plaintiff has had access to the plan's SPD since at least 2007, when Kellogg sent a copy of it to Plaintiff's address. (See Bent Decl. ¶ 3.)

3

October 14, 2008, Plaintiff had Dr. Schwartz draft another letter expressing an opinion that the surgery was medically necessary. Dr. Schwartz did so, and a copy was sent to Plaintiff's insurer. (Claxton Aff. ¶ 6.) The letter stated: "I have been asked by Ms. Claxton to write a letter on her behalf verifying that it is medically necessary that she go out of network to have this surgery which is not, to the best of my knowledge, commonly performed by physicians in the Augusta, Georgia area." (Compl. Ex. B.) On October 20, 2008, the day before the scheduled surgery, the insurance company informed Plaintiff, by letter, that it would not cover the procedure citing that fact that Dr. Cole and the Medical University of South Carolina did not participate in Plaintiff's provider network. (Resp. Ex. F.)

That same day, Plaintiff's husband called Kellogg's People Services Center, a call center employees can utilize for answering questions regarding employee benefits. (Bent Decl. ¶ 2, 4; Ex. B.) Mr. Claxton spoke with Ms. Priscilla Stewart. An electronic log of the conversation was produced. (See Bent Decl. Ex. B.) The log reveals that Plaintiff's husband explained to Ms. Stewart that his wife was scheduled for surgery the following day, that he and his wife received a letter from the insurance company informing that the company would not be covering the surgery, and asked for help.

4

Ms. Stewart then initiated a three-way call between herself, Ms. Claxton, and a representative from the insurance company. The representative explained that Dr. Cole would need to contact Dr. Gross, the insurance company's medical director, on the "peer-to-peer" line "to determine if the procedure would be covered . . . ." (Id.) Ms. Stewart then contacted Dr. Cole's office and explained the situation to Stacy, a representative from the office. Ms. Stewart then "escalated" the claim to Andrew, another employee at Kellogg's call center, due to Andrew's claim expertise. (Id.) It is not clear from the record whether the peer-to-peer conversation ever took place.

The following day, the day of the surgery, Andrew apparently called Mr. Claxton and informed him that he had emailed the insurance company, further inquiring as to the reasons for the benefits denial, and that he was still waiting on a response. Mr. Claxton explained that "he was going to go ahead and have the surgery for his wife" and that he was displeased with insurance company's actions. (Id.) Mrs. Claxton underwent the surgery, incurring medical bills in the amount of $25,367.37. (Compl. ¶¶ 11-12.)

Later that afternoon, Andrew received an email from a representative of the insurance company that explained that the denial was made because Dr. Cole and the Medical University of South Carolina were not in-network providers based upon the

5

terms of the Claxton's plan. (Id.) The email also explained that similar services were available in-network, but that no compelling reason had been given as to why an exception should be made in the Claxton's case. (Id.) Andrew called Mr. Claxton that day and passed along what he had learned from the insurance company. In this conversation, Mr. Claxton was informed of the right to file an ERISA administrative appeal, and information on how to file such an appeal was mailed to Plaintiff's address, including a "Kellogg ERISA Appeal Form." (Bent Decl. ¶ 4, Ex. C.) Plaintiff has not denied that her husband was informed of the right to file an administrative appeal, nor has she denied that the form was sent to her address. Plaintiff submitted her medical bills to her insurance company, but the company has yet to pay for the surgery. (Id. ¶ 13.)

### 2. The Plan

Plaintiff's plan contains up to three points at which discretion may be exercised regarding health insurance coverage for medical procedures: (1) the initial medical benefits determination, (2) the initial appeal of an adverse medical benefits determinations, and (3) the final appeal of an adverse medical benefits determination. Regarding initial medical benefits determinations, the SPD identifies the claims administrator as "CIGNA." (SPD at 37.) At page sixty-three (63)

of the SPD, titled "Additional Information Required by ERISA," "Connecticut General Life Insurance Company" (Connecticut General) is identified as the claims administrator for initial medical benefits determinations. Connecticut General is a wholly owned subsidiary of CIGNA Corporation. (See Def.'s Corporate Disclosure Statement, Doc. no. 6 at 5-6.)

According to the plan, insureds who are affected by adverse benefit determinations, such as Plaintiff, may make an initial appeal of a benefits denial in the following manner:

> **How to Appeal**
> To appeal an Adverse Benefit Determination, you must, within one hundred eighty (180) days after you receive the determination, notify the Claims Administrator that you wish to appeal. **This notice must be in writing (by letter or e-mail) except that notice may be given orally. Appeals should be (1) mailed to the Claims Administrator for Plan Appeals, Kellogg Company, Kellogg People Services Center, One Kellogg Square, Battle Creek, MI 49016-3599, Atten: ERISA Sub-Committee, or (2) sent on e-mail topeople.services@kellogg.com (Phone: 1-877454-7287), except that notice may be given orally or in writing in appeals involving Urgent Care Claims.** You have the right to submit written comments, documents, records, and other pertinent information, and you will be given reasonable access to, and copies of, all documents, records, and other information relevant to your claim.

(Bent Decl., Ex. A at 40.) (emphasis added). If the initial appeal is denied, plan participants can make a final appeal in the following manner:

> **How to Make a Final Appeal**
> Within ninety (90) days after you receive a notice that your appeal has been denied, you may make a final appeal of the Adverse Benefit Determination to the

7

Claims Administrator. This appeal must be in writing (by letter or e-mail) except that notice may be given orally. Appeals should be (1) mailed to the Claims Administrator for Plan Appeals, Kellogg Company, Kellogg People Services Center, One Kellogg Square, Battle Creek, MI 49016-3599, Attn: ERISA SubCommittee, or (2) sent on e-mail to people.services@kellogg.com (Phone: 1-877-454-7287), except that notice may be given orally or in writing in appeals involving Urgent Care Claims. You may submit written comments, documents, records, and other pertinent information, and you will be given reasonable access to, and copies of, all documents, records, and other information relevant to the claim.

(Id. at 41.) For initial appeals, the claims administrator is "the Kellogg Company ERISA Administrative Sub-Committee," a panel of six human resources professionals. (Id. at 37; Bent Decl. Ex. C.) For final appeals, the claims administrator is "Kellogg Company ERISA Administrative Committee," comprised of five executives. (Id. at 38; Bent Decl. Ex. C.) Both appeal committees are located at the Kellogg People Service Center. (Id. at 63.) Finally, the "Additional Information Required by ERISA" page of the SPD identifies the plan sponsor and administrator as the "Kellogg Company."

### 3. *After the Surgery*

In the days following Plaintiff's surgery, Plaintiff, Plaintiff's husband, and Plaintiff's father called and inquired as to why the surgery was not covered. (Claxton Aff. ¶ 10.) A human resources manager at Kellogg also called and inquired as

to why the surgery was not covered. (Id. ¶ 11.) Plaintiff's affidavit testimony does not list specifically who was called, but Plaintiff does testify that she received no written response to any of these calls. (Id. at ¶ 13.)

On January 27, 2009, Plaintiff, through legal counsel, sent a demand letter to Dr. Gross demanding payment within sixty (60) days for "all outstanding medical bills acquired by Mrs. Claxton with regards to, [sic] the surgery performed by Dr. Cole on October 21, 2008 pursuant to the terms of the coverage."[2] (Resp. Ex. G.) The time period for responding to Plaintiff's counsel's demand letter came and went without a response.

### B. Procedural History

On June 16, 2009, Plaintiff filed this lawsuit against CIGNA Healthcare for damages in the Superior Court of Richmond County. Plaintiff alleged that she was entitled to insurance benefits, statutory penalties for "bad faith" denial of her insurance claim, and attorney's fees under Georgia law. (Compl. ¶ 17.) Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant, on July, 30, 2009, removed this action to federal district court

---

[2] Plaintiff also alleges to have "sent a written appeal" to Dr. Gross. (Resp. at 8.) It is unclear whether this averment refers to the demand letter or a second letter sent to Dr. Gross that could be construed as a notice of appeal. If construed as the latter, Plaintiff provides no supporting documentation to support this assertion.

based upon federal question jurisdiction due to complete ERISA preemption. (Not. of Removal at 1-3.)

The parties do not dispute whether the case was properly removed. However, the Court, conscientious of its obligation to examine subject-matter jurisdiction *sua sponte*, concludes that the case was properly removed because a federal question has been presented; Plaintiff's claim is completely preempted by ERISA, a federal statute. See Ervast v. Flexible Prods. Co., 364 F.3d 1007, 1012-13. (11th Cir. 2003); Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999).

Instead of answering the complaint, Defendant has moved to dismiss Plaintiff's claim, now recharacterized as a claim for benefits under ERISA, and has invoked the affirmative defense of failure to exhaust administrative remedies. See Fed. R. Civ. P. 12(b)(6). As stated above, the Court has converted the motion into a motion for summary judgment. See Fed. R. Civ. P. 12(d). In its motion, Defendant states that "CIGNA Healthcare was improperly named as the Defendant. The parties have agreed that [Connecticut General] will be substituted for CIGNA Healthcare." (Mot. to Dismiss at 1 n.1.) The captions of the parties' subsequent pleadings reflect this change.[3]

---

[3] Although the parties have not raised the issue, the Court has reservations regarding whether Connecticut General is a "plan administrator" amenable to suit under ERISA. See 29 U.S.C. § 1132(a)(1)(B). The Eleventh Circuit has declined to hold that third-party administrative service providers that process insurance claims, where the employer retains ultimate

10

## II. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of fact and the movant is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there

---

decisional control over benefits eligibility, are "plan administrators" within ERISA. See Oliver v. Coca-Cola Co., 497 F.3d 1181, 1193-95 (11th Cir. 2007). Specifically, in a case similar to the case *sub judice*, the Eleventh Circuit declined to hold Connecticut General a plan administrator where Connecticut General made initial medical benefit determinations, but did not retain ultimate control over benefits eligibility. See Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 289-90 (11th Cir. 1990). Here, Connecticut General, a wholly-owned subsidiary of CIGNA Corporation, is the entity that makes initial medical benefit determinations for plan participants. Kellogg Company, the employer, however, retains the ultimate decisional control over benefits eligibility through the company's ERISA appeals committees.

Ultimately, the Court need not make a holding as to whether Connecticut General is a proper defendant because the exhaustion of administrative remedies analysis, discussed *infra*, is dispositive, and applies regardless of whether the defendant is substituted. Furthermore, the Court's reservations regarding Connecticut General's party status need not compel the Court to dismiss the suit for lack of subject matter jurisdiction. Plaintiff has alleged a violation of a federal statutory right, thereby presenting a federal question under 28 U.S.C. § 1331. See also Adams v. IBM, Corp., 1:05-cv-3308-TWT, 2007 WL 14293, at *1-2 (N.D. Ga. Jan. 2, 2007) (finding district court retained federal question subject matter jurisdiction over removed ERISA suit despite finding that plaintiff sued an improper party).

is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Summary judgment is not appropriate " . . . if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the instant case, the time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. Discussion

Defendant alleges that Plaintiff's claim should be dismissed because Plaintiff did not properly exhaust her administrative remedies. "It is well-established law in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." Springer v. Wal-Mart Assocs.' Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990). "The purposes behind the exhaustion requirement include reducing the number of frivolous lawsuits brought under ERISA, minimizing dispute resolution costs, assisting fiduciaries in carrying out their duties, preventing premature judicial intervention, and providing the courts with a more fully developed record if litigation is necessary." Weems v.

Coca-Cola Co., No. 1:02CV2893 TWT, 2006 WL 2523019, at *2 (N.D. Ga. Aug. 24, 2006).

"However, a district court has the sound discretion 'to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate,' . . . or where a claimant is denied 'meaningful access' to the administrative review scheme in place." Bickley v. Caremark, 461 F.3d 1325, 1328 (11th Cir. 2006) (internal citations omitted); see also Ivey v. Pearce, No. 1:08-cv-1840-WSD, 2008 WL 4613646, at *5 (N.D. Ga. Oct. 15, 2008); Weems, 2006 WL 2523019, at *2-*3; Spivey v. S. Co., 427 F. Supp. 2d 1144, 1154-56 (N.D. Ga. 2006).

### A. Compliance with the Exhaustion Requirement

Plaintiff first argues that she complied with the terms of the plan when she, her father, and her husband made telephone calls inquiring as to why Plaintiff's surgery was not covered, and when she allegedly sent a written appeal to Dr. Gross. (Resp. at 4-5.) According to Plaintiff, the calls constitute oral notice of an adverse benefits determination appeal pursuant to the terms of the plan as set forth in the SPD. The Court disagrees.

The terms of the SPD mandate that appeals must be mailed or emailed to the Kellogg People Services Center at the address or

email address provided. The SPD states that oral notice may be given only in the case of Urgent Care Claims. Plaintiff has never argued that her claim was an Urgent Care Claim, and the Court does not find that her claim was one. The terms of the plan are clear regarding non-urgent care claims, and Plaintiff did not comply with those terms by making telephone calls.

Plaintiff's counsel also alleges that he sent a demand letter on behalf of Mrs. Claxton to Dr. Gross and that "Mrs. Claxton sent a written appeal.[4] Again, Defendant did not respond to this appeal . . . to Dr. Gross, the Defendant's medical director." (Resp. at 8.) The demand letter was not sent to the correct party or address provided for written appeals. Thus, Plaintiff did not comply with the terms of the SPD.

Therefore, the Court finds that Plaintiff has not exhausted her administrative remedies prior to suing in court to recover benefits allegedly due to her under the plan.

### B. Futility

The inquiry is not over, however, since the Court may waive the administrative exhaustion requirement. Bickley, 461 F.3d at

---

[4] As discussed *supra*, it is unclear whether Plaintiff is averring that the demand letter constitutes a written appeal, or that a second letter was sent to Dr. Gross constituting a written appeal. Other than the demand letter, Plaintiff provides no evidence in the record that a second letter—that could be construed as written notice of appeal—was actually mailed to or received by Defendant. In any event, an unverified allegation of a written appeal is not sufficient to overcome a motion for summary judgment.

14

1328. Plaintiff argues that the Court should waive the exhaustion requirement because utilizing the appeals process under her plan would have been futile in her case.

Plaintiff has cited to a number of cases decided in this circuit in an attempt to establish the futility exception, attempting to distinguish her case from cases where the exception was held to not be met. See Ivey v. Pearce, No. 1:08-cv-1840-WSD, 2008 WL 4613646, at *5 (N.D. Ga. Oct. 15, 2008); Springer v. Wal-Mart Assocs.' Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990); Spivey v. S. Co., 427 F. Supp. 2d 1144, 1154-56 (N.D. Ga. 2006); Weems, 2006 WL 2523019, at *2-*3.

The plaintiffs in Bickley, Ivey, and Spivey made no effort to utilize their plans' respective internal appeal processes. Thus, these plaintiffs could not establish futility as a matter of law. In Springer, the Eleventh Circuit held that even though the party making the initial medical benefits determination and the party deciding benefit determination appeals were the same, the futility exception did not exist as a matter of law. The court also rejected the argument that because the initial and appellate decision makers shared the same interest in cost containment, it was futile to utilize an internal appeals process. Finally, in Weems, the plaintiff utilized her plan's internal administrative process by filing an appeal. But because the plaintiff did so in an untimely manner, the plan's appeals

committee never evaluated the appeal. Thus, the claim of futility was rejected. Plaintiff argues that her case is distinguishable from the above-cited cases because of the multiple telephone calls made by Plaintiff, or those acting on her behalf, and the alleged letter to the insurance company inquiring as to the denial of coverage for her surgery, that were not responded to, allegedly in violation of the terms of the plan. (See SPD at 40 (explaining that if an appeal is denied, the plan participant will be notified).)

First, the plan was not violated when Plaintiff never received notice of an unsuccessful appeal, because Plaintiff never successfully filed an appeal under the terms of the plan, as discussed above. Secondly, by relying on her calls and demand letter to the insurance company's Medical Director that went unresponded to, Plaintiff is essentially arguing for a new exception to the administrative exhaustion requirement.[5] The Court, however, is unwilling to extend the futility exception. The Eleventh Circuit has made clear that courts in this circuit shall apply the exhaustion requirement strictly, and shall recognize only narrow exceptions, based on exceptional circumstances. Perrino S. Bell Tel. & Tel. Co., 209 F.2d 1309, 1315 (11th Cir. 2000).

---

[5] Plaintiff's new exception would be this: if a plan participant makes a good faith effort to utilize the plan's internal appeals process, and the plan participant is ignored, then the exhaustion requirement should be waived.

Plaintiff next offers two additional pieces of evidence in attempt to establish futility: (1) Dr. Schwartz's letters stating his opinion that it was medically necessary to go outside the provider network for Plaintiff's surgery and (2) statements explaining the reasoning behind Plaintiff's initial benefits denial relayed to Mr. Claxton by representatives from Kellogg's People Services Center. (Resp. at 7-8.) Neither piece of evidence can serve as a basis for a finding of futility.

The concept of futility, as it has been developed in the Eleventh Circuit, does not depend upon the likely outcome of the administrative review. Rather, the concept of futility has been equated with a plaintiff's inability to present a claim for administrative review. See Garland v. Gen. Felt Indus., Inc., 777 F. Supp. 948, 952 (N.D. Ga. 1991); see also Spivey, 427 F. Supp. at 1154-56. Both pieces of evidence listed above speak to the potential success of an appeal under the plan.[6] Thus, arguments based on the aforementioned evidence must fail as a matter of law.

Finally, although Plaintiff has not raised the issue, the Court notes that Plaintiff was not denied meaningful access to

---

[6] Regarding the potential success of an appeal, the record indicates that Plaintiff's out-of-network consultation with Dr. Hoffman for an endoscopic ultrasound was approved, while her out-of-network surgery with Dr. Cole was not. Both of Dr. Schwartz's letters to the insurance company expressed the same professional opinion that the out-of-network providers services were medically necessary based on the out-of-network providers' expertise, and a lack of expert physicians in-network.

the internal administrative review process. See Perrino, 209 F.2d at 1315 (providing that one of the grounds for futility is where a claimant is denied meaningful access to the administrative review scheme in place); Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir. 1990) (affirming district court's finding of futility because employer, who was also the plan administrator, withheld from plaintiff plan documents and "exercised its control to deny [plaintiff] meaningful access to [the plan's administrative review] procedures"). Here, unlike the plaintiff in Curry who was wrongfully denied access to plan documents, information on how to file an ERISA appeal under the plan was mailed to Plaintiff's address, including the Kellogg ERISA Appeal Form. Moreover, Plaintiff has been in possession of a copy of her plan's SPD since 2007. Accordingly, denial of meaningful access to the internal administrative review process is not a proper ground for finding futility in this case.

For the foregoing reasons, Plaintiff has not established the futility exception.

## IV. Conclusion

Based upon the foregoing, the normal course for the Court to take would be to dismiss Plaintiff's claim without prejudice, allowing Plaintiff to fully exhaust the plan's internal appeals

process, thus leaving open the possibility for filing a lawsuit at a later date. Here, however, the one hundred-eighty (180) day time period for Plaintiff's appeal under the plan had passed before the case was removed to the Court. Thus, no timely appeal is possible.

Based upon the reasons stated herein, summary judgment is **GRANTED** in favor of Defendant on all claims, and **FINAL JUDGMENT** shall be entered in its favor. The Clerk is directed to **CLOSE** this case, and **TERMINATE** all pending motions.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of March, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA